**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON**

**CIVIL ACTION NO. 05-1-DLB**

**BETTY FUGATE, ET AL.**                                                           **PLAINTIFFS**


**vs.**                         **MEMORANDUM OPINION & ORDER**


**LOWE'S HOME CENTERS, INC.**                                            **DEFENDANT**

*******************

In this action, Plaintiffs have sued Lowe's Home Centers, Inc. ("Lowe's") for gender discrimination in employment under federal and state law.  Plaintiffs seek to represent a putative class of former, current, and future employees of Lowe's who have suffered from any form of gender discrimination at the hands of Lowe's.

This matter is currently before the Court on Plaintiffs' Motion for Class Certification and for Bifurcation of Trial (Doc. # 25) and related motions.  The Court held oral argument on the motion on March 23, 2006.  Jacqueline S. Sawyers, Esq. and Anthony J. Bucher, Esq. appeared on behalf of Plaintiffs; Adam C. Wit, Esq., and Allan G. King, Esq. appeared on behalf of Defendant Lowe's; the proceedings were recorded by Official Court Reporter Lisa A. Wiesman.

The Court, having considered the parties' filings, and having heard from counsel at oral argument, and being otherwise sufficiently advised, concludes for the reasons that follow that Plaintiffs' Motion for Class Certification and for Bifurcation of Trial will be **denied**.

## INTRODUCTORY FACTS AND BACKGROUND

According to the Complaint, each Plaintiff (with the exception of Plaintiff Brady who is still employed as Lowe's) was a former employee of Lowe's.  More specifically, Plaintiff Betty Fugate was hired by Lowe's in April of 1999 for the position of Assistant Store Manager (ASM).  Fugate alleges she was harassed based upon her gender, demoted six months later, and subsequently resigned in June of 2003 due to an alleged hostile work environment.  Plaintiff Shawna Durham was hired by Lowe's in March of 2001 for the position of Stocking Department Clerk.  Durham alleges she was harassed based upon her pregnancy, and resigned in July of 2002 due to an alleged hostile work environment. Plaintiff Susan Brady was hired by Lowe's in October of 1997 for the position of Receiver. Brady alleges she was given work assignments and time limits not given to male employees, with continuous threats of termination if not accomplished.  Brady maintains she was demoted in September of 2004 in retaliation for complaining of discrimination and harassment based upon her gender.

Plaintiffs present four claims in their Complaint, namely, that Lowe's paid male employees higher wages than female employees for comparable work and consistently denied female employees pay raises, in violation of the federal Equal Pay Act, 28 U.S.C. § 206(d), and Kentucky's Equal Pay Act, K.R.S. § 337.423; that Lowe's discriminated against female employees in the terms and conditions of their employment based upon their gender, in violation of K.R.S. Chapter 344; and that Lowe's retaliated against Plaintiffs for complaints about what they perceived to be unlawful, discriminatory practices.

Plaintiffs seek several forms of relief for these claims, namely, they request judgment declaring Lowe's to be in violation of Kentucky common law and federal and

2

Kentucky statutes on discrimination and equal pay; that the Court permanently enjoin Lowe's from continuing these practices by ordering that Lowe's:

(1)     implement sensitivity training regarding sexual discrimination and require all its management and supervisory employees to undergo this training;

(2)     institute a formal program encouraging employees and management to report all incidents of sexual discrimination and unequal pay;

(3)     establish an effective grievance system for employees and management; and

(4)     require full and complete disclosure of all records in Lowe's possession and/or control relating to sexual discrimination and unequal pay.

In addition to these equitable remedies, Plaintiffs ask the Court to establish a fund sufficient to compensate all victims identified through discovery and a confidential claims process for class members to apply for and receive compensation from.  They also seek, for each Plaintiff and each class member, an award of both compensatory and punitive damages in an amount consistent with the evidence.

The Plaintiffs have sued on behalf of themselves as well as a proposed class of women identified as:

All current, former, and future[1] females working at Lowe's Store No. 554 in Florence, who were at any time, or are now, or will be during the course of the litigation, paid less than similarly situated male employees, or who have otherwise been treated less favorably with respect to compensation, promotions and/or other tangible employment practices, due to gender.

---

[1] At oral argument Plaintiffs' counsel explained that by "future" employees they meant all women employees who were employed by Lowe's up to the date of class certification.

**DISCUSSION**

**A.    *Overview of Federal Civil Rule 23*[2]**

Before the Court may certify a class action, Plaintiffs' proposed class must first satisfy <u>all</u> four of the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.   If each of these four prerequisites is established, Plaintiffs must then show that the class may be maintained under one of the theories available under Rule 23(b).   The burden of establishing all of the necessary requirements rests on the party seeking class certification.   *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1086 (6th Cir. 1996).

In this case, Plaintiffs seek certification of the class defined above under all three subsections of Rule 23(b), a point reiterated during oral argument.   Plaintiffs submit that a Rule 23(b)(1) class is warranted in order to avoid the inconsistent adjudications that would occur if the cases were pursued individually, though Plaintiffs do not cite authority where a Rule 23(b)(1) class has been certified in an employment discrimination-type case.   They further maintain that a Rule 23(b)(2) class is also warranted because the primary focus of their case is to rehabilitate the attitude of the Lowe's Florence, Kentucky store toward its female employees through injunctive and declaratory relief.   Finally, they also submit that a Rule 23(b)(3) class is appropriate given that common questions of liability predominate over individual issues related to each class members' damages, and the efficiency and

---

[2]   Although filed in federal court, Plaintiffs bring this alleged class action pursuant to Rule 23 of the Kentucky Rules of Civil Procedure.   However, because this action is in federal court, Rule 23 of the Federal Rules of Civil Procedure control.   This distinction is of no consequence as both rules are virtually identical.

economics of pursuing these claims by way of class action is superior to the cost prohibitive nature of class members pursuing their claims individually.

Plaintiffs' submission that their class is appropriate for every available Rule 23(b) class raises concerns as to whether it is actually appropriate for any Rule 23(b) class. At oral argument, Plaintiffs were unable to identify any authority wherein a class of the scope requested by Plaintiffs had been certified under all three classes of subsection 23(b) in an employment-related action. Because Plaintiffs have failed to meet their burden of establishing the subsection (a) prerequisites of a class action under Rule 23, the Court does not need to engage in an analysis under Rule 23(b) or determine which, if any, Rule 23(b) class is appropriate in this case.

## B.   General Considerations in Reviewing a Class Certification Request

Federal district courts have broad discretion in determining whether class certification is appropriate. *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988). However, the Supreme Court has made clear that, when faced with a motion for class certification, district courts are supposed to conduct a "rigorous analysis" of the Rule 23 factors. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982). The plaintiff has the burden of pointing out a sufficient basis for sustaining a motion for class certification. *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir. 1976).

What type of and how much evidence is needed for adequate review of a class certification motion is less clear. On one hand, "a trial court may not inquire into the merits of a claim." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974). "On the other hand, a trial court is not artificially limited in its analysis to the pleadings, but must take the substantive allegations of the complaint as true while considering the range of proof

5

necessary to establish those allegations." *Tucker v. Union Underwear Co., Inc.,* 144 F.R.D. 325, 326-27 (W.D. Ky. 1992) (referencing *Falcon,* 457 U.S. at 160). In this case, the foundation of Plaintiffs' claims rests upon an alleged general and widespread policy of gender discrimination present throughout the business operations at Lowe's Florence, Kentucky store.

The Sixth Circuit recently provided some significant guidance for district courts in understanding the level of review necessary for consideration of motions for class certification in employment discrimination actions. In *Reeb v. Ohio Department of Rehabilitation and Correction,* 435 F.3d 639 (6th Cir. 2006), that court was faced with review of a district court ruling on a class certification motion in a generalized Title VII discrimination case, circumstances not unlike those presently facing this Court.[3] The Sixth Circuit explained that *Falcon* "requires plaintiffs requesting class certification in a case raising generalized Title VII discrimination claims to allege significant proof that [defendant] operated under a general policy of gender discrimination that resulted in gender discrimination manifesting itself in the same general fashion as to each of the kinds of discriminatory treatment upon which the pattern-or-practice class action rests." *Reeb,* 435 F.3d at 644 (internal quotation and citation omitted).

In *Reeb*, four female prison guards filed a putative class action against their employer, alleging it violated Title VII by treating them differently from male guards. Seeking to represent all past and present female employees at the prison, the named

---

[3] Although Plaintiffs seeks to distinguish *Reeb* on the grounds that their claims are specific, as opposed to the general allegations of discrimination found lacking in *Reeb*, the claims herein suffer from the same fatal lack of commonality and typicality.

plaintiffs claimed to have been the victim of the defendant's "general policy" of discrimination on the basis of sex.  The district court certified the class and found Rule 23(a)'s commonality requirement met "[b]ecause the issue of whether the Defendant violated Title VII will be common to the class." *Id.* at 644 (internal quotation marks and citation omitted).  The Sixth Circuit reversed, holding that the district court abused its discretion because "[i]f this were the test, every plaintiff seeking to certify a class in a Title VII action would be entitled to that certification." *Id.; see also Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 571 (6th Cir. 2004) ("Conclusory allegations and general assertions of discrimination are not sufficient to establish commonality." (citing *Falcon,* 457 U.S. at 157); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("It is not every common question that will suffice [to show commonality], however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.").

With these standards in mind, the Court turns to consideration of the Rule 23(a) factors.

## C.    *"Rigorous Analysis" of the Rule 23(a) Factors*

### (1)    *Numerosity*

Rule 23(a)(1), commonly referred to as the numerosity requirement, requires an inquiry into whether joinder of all alleged class members would be impracticable. "Impracticability" depends upon all the circumstances of the case.  *Cash v. Swifton Land Corp.,* 434 F.2d 569, 571 (6th Cir. 1970).  While no specific minimum number of alleged class members is required, Plaintiffs must demonstrate the existence of the numbers of persons they purport to represent.  *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337 (E.D.

7

Ky. 2002).  In making this determination the Court may consider "reasonable inferences drawn from facts before it." *Id.; Senter v. General Motors Corp.,* 532 F.2d 511, 523 (6th Cir.1976), *cert. denied,* 429 U.S. 870 (1976).

In this case, Plaintiffs argue that during the relevant time (1997 to present) Lowe's employed at least 400[4] women, and all of these females are potential class members.  In fact, when asked during oral argument to whom notice would be sent if the Court certified the class as requested by Plaintiffs, counsel indicated all former and current female employees of Lowe's would receive notice.  Plaintiffs assert that this number of women is so numerous that joinder of all members would be impracticable.

In response, Lowe's submits that numerosity is not shown merely by stating that there are at least 400 women who are potential class members.  More particularly, Lowe's argues that merely including all women as potential class members is insufficient, especially in view of the fact that Defendants have attached declarations from current female employees who say they have not observed or been subjected to harassment or discrimination at the Florence store.  Lowe's also challenges whether joinder is, in fact, impractical since the purported class members are not geographically spread out, but all worked at the Florence store.

While 400 women may sound like a large number, when asked during oral argument how many of those women may have suffered from the same discrimination or would likely join the class, counsel could not provide any specifics, other than to point to statistical evidence showing that women were treated differently than men at Lowe's in a variety of

---

[4]  Plaintiffs originally alleged in their motion for class certification that the proposed class size was approximately 100.  During oral argument Plaintiffs' counsel revised that number to 400.

ways.[5]   Nonetheless, as Plaintiffs have at least identified a large enough number of proposed class members to determine that joinder of all members would be impracticable, the Court concludes that the numerosity requirement of Rule 23(a)(1) has been satisfied in this case.

### (2)    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  This requirement is qualitative rather than quantitative; in other words, there need only be one issue common to the class. *In re American Medical Systems,* 75 F.3d at 1080. As the Sixth Circuit has stated, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.  What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague,* 133 F.3d at 397.

In *Falcon*, the Supreme Court noted that class actions may be appropriate where "the issues involved are common to the class as a whole and where they turn on questions of law applicable in the same manner to each member of the class" such that the common issue may be litigated for all in an "economical fashion."  *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 155 (1982) (citations omitted).  Thus, while there need only be one common issue,

---

[5]   This report and accompanying statistical evidence was filed by Plaintiffs as part of a motion for leave to file under seal (Doc. # 60) after the March 23, 2006 oral argument.  By this Order, the report of Dr. Moyer, Ph.D., and the attached statistics have been made part of the record.  The Court's review of Dr. Moyer's report and the accompanying statistics does not alter the Court's decision denying class certification as proposed by Plaintiffs.  Despite the conclusions of Dr. Moyer, which by the Court's review do not include any analysis of individualized factors, such as why employees may have been demoted, were hired in at certain salaries, the levels of pay based on seniority or other factors, or the amount of any STAR increases, the proposed class still suffers from the same lack of commonality and typicality which precludes certification of the proposed class.

9

that issue must not be at too great a level of generalization or abstractness. *Sprague*, 133 F.3d at 397.

Plaintiffs allege there are several common questions of law and fact common to them and the putative class members, including –

C    whether Lowe's engaged in a continuing pattern and practice of gender discrimination in violation of Kentucky law;

C    whether Lowe's engaged in a continuing pattern and practice of failing to report incidents of gender discrimination and abuse in violation of Kentucky statutory and common law;

C    whether Lowe's engaged in a continuing pattern and practice of tacitly tolerating gender discrimination in the layout and positioning of personnel throughout the store based upon gender in violation of Kentucky statutory and common law;

C    whether Lowe's engaged in a continuing pattern and practice of failing to properly screen, supervise and monitor management personnel, who it had reason to believe were engaging in acts of gender discrimination in violation of Kentucky law;

C    whether Lowe's engaged in a continuing pattern and practice of failing to pay equal wages to female employees of same or similar positions to male employees, in violation of federal Equal Pay Act and Kentucky law; and

C    whether Lowe's engaged in a continuing pattern and practice of retaliatory firing, discharging or displacing female employees who challenged these issues in violation of federal and Kentucky law.

10

Lowe's takes issue with Plaintiff's commonality argument and points out that there is little commonality among the Plaintiffs and the members of the purported class. In support, Lowe's points out the language of *Falcon* (national origin discrimination case), and the Supreme Court's caution that just because a named plaintiff can make a showing of discrimination as to her, this does not necessarily "bridge the gap" of showing she was so affected because of class-wide grounds. As stated by *Falcon*, "conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Falcon,* 457 U.S. at 157.

According to Lowe's, Plaintiffs have not identified facts with their claims and the potential class claims that would "bridge the gap" between themselves and the putative class. Rather, the general statements and conclusions they offer suggest that they "wonder" whether gender discrimination has occurred. Lowe's asserts that this is insufficient because to otherwise accept it would turn every Title VII case into a potential class action. *Falcon,* 457 U.S. at 158. This same concern was recently reaffirmed by the Sixth Circuit in *Reeb* wherein the Sixth Circuit stated that if the inquiry was whether an employer violated Title VII, virtually every plaintiff would be entitled to class certification. *Reeb*, 435 F.3d at 644. Plaintiffs counter this by arguing that rather than alleging the generic discriminatory practices criticized in *Reeb*, they have alleged specific discriminatory

practices such as failure to promote, failure to pay equal wages, retaliation, discriminatory positioning of personnel, and hostile work environment.

In reviewing the issues of commonality and typicality, the *Reeb* panel instructed district courts to examine the precise nature of the various claims of the Plaintiffs and determine if those claims are common of the claims of the putative class. Consistent with *Reeb*, the claims of the named Plaintiffs are as follows:

Fugate alleges that she received inadequate training as an assistant store manager, was denied access to information about her job that was provided to other male employees, was demoted with a reduction in pay, and suffered from a hostile work environment which lead to her being constructively discharged. As a result of Lowe's alleged discriminatory practices, Fugate sought medical treatment.[6]

Durham alleges pregnancy discrimination. More particularly, Durham alleges that she was assigned jobs that were inconsistent with her known medical restrictions due to her pregnancy. Durham also alleges a hostile work environment due to alleged derogatory statements made by male employees at Lowe's and that she was forced to quit due to this hostile work environment.[7]

---

[6] The record reflects that Fugate was hired as an Assistant Store Manager (ASM) at an annual salary of $35,006.40. Fugate was ASM from April-October, 1999 and was demoted to Department Manager of Tools & Hardware, then Electrical, then Paint, in late, 1999, with a consequent pay reduction. In 2001 Harold Hignite became Lowe's store manager. Although Hignite gave Fugate favorable evaluations, Fugate claims he harassed her, causing her to resign June 12, 2003. Fugate testified Hignite's dissatisfaction was because of her work-related injuries, medical leaves, and work restrictions. Fugate testified Hignite treated the Department Managers the same, whether male or female. Fugate recalls applying for 3 other positions while at Lowe's store in Florence, 2 of which went to female applicants.

[7] The record reflects that Durham was hired as a Receiver/Stocker in March, 2001 making $9.00 per hour which increased to $9.25 per hour after 90 days. After 2 weeks, Durham was transferred to Pricing/Signage Coordinator, a job Hignite offered her after Durham advised she was

Brady alleges that she was required to perform unnecessary work not required of male employees, was retaliated against due to her gender, and received a retaliatory demotion.[8]

Although Plaintiffs say that the legal theories set forth in bullet-form fashion on pages 10 and 11 herein are common to the requested class, it is clear from the allegations of the named Plaintiffs that their own theories are not necessarily common amongst themselves. One of the Plaintiffs, Fugate, was a salaried employee, and the other two were hourly employees. Two were allegedly demoted, although only one, Fugate, received a commensurate reduction in pay. Durham was allegedly discriminated against due to her pregnancy, which is unique to her case. Two Plaintiffs allege a hostile work environment

pregnant. Durham was out on medical leave from September 12-November 12, 2001. Upon her return she was not given her prior job, but instead worked as a Customer Service Associate for the same pay and benefits, and another woman was placed in the Signage job. Durham never sought a promotion while at Lowe's. Durham alleges she was also harassed by Hignite, in part because she was pregnant. Durham became pregnant again in November 2001 while out on medical leave. Durham started maternity leave on May 21, 2002 and returned to work 6 weeks later, worked 2 or 3 weeks on a part-time schedule, and then quit July 26, 2002. Durham applied for positions at the Florence store and was told they were not hiring, as well as at the Highland Heights store, where she was offered a job at $8.50/hour and she declined. Durham alleges the refusal to offer her a decent position was in retaliation for calling the complaint hotline about pregnancy harassment.

[8] The record reflects that Brady was hired by Lowe's in October, 1997 as a CSA, then assigned to the sole RTM Clerk position in the store. Brady stayed in this job until September, 2004, at which time she transferred to a Cashier position. According to Lowe's, this transfer was the result of her repeated violations of Lowe's Code of Ethics and policies and procedures on credited merchandise (that it must be field destroyed and not taken or sold by an employee). Lowe's alleges that Brady had taken wallpaper samples and some pages from magazines. Brady's pay, benefits, and schedule remained, although she considered the cashier job a demotion. Hignite gave the RTM Clerk position to another female. Brady remains employed by Lowe's as a cashier. Brady has never applied for another job at the store. Brady alleges Hignite "harassed" her, though the harassment was in the nature of asking what she believes was too much of her on work tasks, though she typically completed what was asked of her. Brady further alleges Hignite made her feel belittled and had a negative tone with her, although he also yelled at male employees. Brady was also upset with Hignite because he asked that either her or her husband transfer from the Florence store because company policy prohibits married employees from working at the same location.

13

while the other (Brady) does not.  The only uniformity among their legal theories is they each allege discrimination by Lowe's under varying theories, and complained about Mr. Hignite harassing them in varying ways.  Although the Court recognizes that only one common issue is necessary for commonality to be satisfied in any given case, stating that each suffered from some sort of discrimination at Lowe's is insufficient to establish commonality for purposes of Rule 23(a)(2).

Additionally, Plaintiffs are seeking to represent a class of all female employees at Lowe's, Florence, Kentucky store who may have suffered from <u>any</u> form of gender discrimination, well beyond the legal theories they bring on behalf of themselves.  Plaintiffs' proposed class includes all forms of gender discrimination, which would include discriminatory practices in hiring, placement, promotion, hostile work environment, and <u>all</u> other "terms and conditions of employment", at all levels of employment.[9]  The legal questions raised by Plaintiffs and their broadly proposed class are not "common" for the purposes of maintaining a class action.  Plaintiffs' discrimination claims are not unlike the hundreds, if not thousands, of individual employment actions which are pursued everyday in courts throughout the country and do not become class actions simply because there may be other plaintiffs with similar claims or a common defendant.

More specifically, each Plaintiffs', as well as each class member's situation will need to be individually reviewed to determine if they have stated a *prima facie* case on their respective claim or theory of discrimination.  While there may be some overlap, such as in

---

[9]  In Plaintiffs' Reply Brief at page 4, they emphasize the breadth of the proposed class by stating the class members include "all current, former, and future female employees of Lowe's Florence store who have been treated less favorably than make employees with regard to **any** aspect of their employment (emphasis in original).

the pay arena, there is no dispute that each employee's situation (i.e. seniority, performance evaluations, salaried versus hourly, etc...) is unique and distinct from other employees and potential class members.  Additionally, as acknowledged by Plaintiffs' counsel during oral argument, there may be defenses, such as statute of limitations, to some of the Plaintiffs' and proposed class members' various causes of actions which will need to be individually analyzed.

Finally, even if the proposed class was certified, Lowe's would be permitted to defend each individual class member's claim by asserting legitimate, nondiscriminatory reasons for its actions.  Plaintiffs and the class members would then be entitled to prove that Lowe's proffered reasons were pretextual.  The answers to questions of law as to one Plaintiff, such as Fugate, or any one class member would only apply to their individual cases, without any further indication that the other proposed class members would have their claims resolved by how the questions were answered as to Fugate, or any other class member.

Simply put, the intense factual nature of Plaintiffs' or the class members' claims prevent a finding of commonality for purposes of Rule 23(a)(2).  Among the proposed class members, there will likely be a broad variety of individual claims, not to mention individual damage claims.  To the extent Plaintiffs or proposed class members seek compensatory damages, it may become necessary for each class members' doctors or economists to testify regarding the injuries, treatment, and pay differentials they seek to recover.

For all of these reasons, the Court concludes that Plaintiffs' proposed class does not further the purpose of the commonality requirement in providing a means for saving

15

resources for both the Court and the parties and resolve the issue in an economical fashion.  *See Am. Med. Sys.,* 75 F.3d at 1080.

### (3)    Typicality

Rule 23(a)(3) requires that the claims of the class representatives must be typical of the claims of the class.  *See* Rule 23(a)(3).  In conducting this inquiry, the Sixth Circuit in *Reeb* described it this way:

> [T]he typicality requirement is not met if the named plaintiffs do not represent an adequate cross-section of the claims asserted by the rest of the class. Employment discrimination claims require proof that particular managers took particular employment actions and that either the managers were motivated by a discriminatory animus or the actions resulted in a disparate impact upon the class;  the district court is therefore required to examine the incidents, people involved, motivations, and consequences regarding each of the named plaintiffs' claims to determine the typicality element of Rule 23(a). *See Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364 ("Title VII prohibits discriminatory employment *practices,* not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer") (emphasis in original). If there are members of the class that will be asserting any or all of these claims, then there needs to be a class representative who is arguing the same thing-or the plaintiffs must show how their claims are typical in the absence of such a named plaintiff-in order for the district court to find typicality.

435 F.3d at 645.  "The premise may be simply stated: as goes the claims of the named plaintiff[s], so go the claims of the class." *Sprague,* 133 F.3d at 399.  Moreover, the class representatives' interests must be aligned with those of the putative class and the pursuit of their claims must also advance the interest of the class.  *American Medical Sys.,* 75 F.3d at 1082.  Although the class representatives' claims need not always involve the same facts or law, there must be a common element of fact or law.  *Senter,* 532 F.2d at 525.

16

Plaintiffs' proposed class fails Rule 23(a)(3)'s "typicality" requirement for many of the same reasons the Court has found insufficient commonality under Rule 23(a)(2).  The highly individualized claims and legal theories of discrimination sought to be certified, and the defenses to those claims are the death knell to Plaintiffs' assertions that their claims are typical of the proposed class.

In deciding that Plaintiffs' claims are not typical of the proposed class, the Court is persuaded, in part, by Lowe's argument that Plaintiffs are seeking to represent a class of females well beyond that which they bring themselves.  For example, Plaintiffs purport to represent a class of female employees who were terminated because of their sex or for unspecified retaliation.  However, none of the Plaintiffs were terminated.  Plaintiffs also purport to represent a class of female employees who were constructively discharged by Lowe's, yet only two of the three named Plaintiffs assert such a claim.  Plaintiffs also seek to represent a class of female employees who were paid less than men because of their sex.  However, Brady admitted that she was the highest paid cashier in the store.  Additionally, from 1988 through Fall 2004, Brady was the sole RTC Clerk in the store, meaning that there were no male RTC Clerks paid more than her.  Similarly, each Plaintiff admitted that she was paid more than both men and women in the store.

Plaintiffs also seek to represent a class of female employees who failed to receive promotions due to their gender.  However, neither Durham nor Brady ever sought a promotion.  Additionally, the only position Fugate sought for which she could identify the successful candidate went to another female employee.  Plaintiffs also seek to represent a class of female employees who were harassed because of their sex, or suffered from a hostile work environment.  Yet, Durham blames the harassment she claims to have

17

suffered on her pregnancy; Fugate on her injuries and medical leaves; and Brady on her working conditions.  Fugate and Durham bring hostile work environment claims, Brady does not.

Plaintiffs also purport to represent a class of female employees who were discriminatorily kept out of "more favorable" departments such as lumber, building materials, and millwright.  However, none of them ever sought a position in any of those departments; nor did they know of another woman who sought such a position.  Additionally, Plaintiffs seek to represent a class of female employees who may have been retaliated against for asserting their rights under FMLA.  However, none of them ever requested FMLA leave.

In this case, because of the wide variety of potential factual scenarios which would certainly be present if the Court certified the proposed class, the Court can easily envision that some of the class members' claims would warrant different outcomes than others.  Additionally, as previously discussed in the commonality analysis, each claim will have separate *prima facie* elements, some of which will require proof of subjective proof by individual class members while others will not.  For example, a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive.  *Id.* at 21-22.  Certification of the proposed

18

class would require an individualized assessment of both objective and subjective components. As stated in *Reeb*, "whether the discriminatory practice actually was responsible for the individual class member's harm, the applicability of nondiscriminatory reasons for the action, showings of pretext, and any affirmative defense all must be analyzed on an individual basis." *Reeb*, 435 F.3d at 651. The Court will be required to make those same inquiries herein.

If the class as proposed is certified in this case, there will certainty be significant factual differences arising between various class members on various legal theories, as well as the very real possibility of different outcomes for different class members which makes it impossible for Plaintiffs to establish that their claims are typical for purposes of Rule 23(a)(3).

### (4)   *Adequacy of Representation*

In order to satisfy Rule 23(a)(4), the class representative must have common interests with the unnamed members of the class and it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter,* 532 F.2d at 524-25; *see also Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026 (6th Cir.1977) (The rule tests "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent" and "the experience of the counsel for the plaintiffs.")

Plaintiffs submit their common interests are shown by the commonality and typicality of their claims. Plaintiff further contend they have and will continue to vigorously prosecute the claims by their participation in this suit and their counsel submits she has extensive experience in employment law and class action litigation.

19

Lowe's responds by arguing that there are inherent conflicts between hourly and management employees within the class Plaintiffs want to represent. Lowe's also points out that Brady and Durham both complain they were unfairly removed from positions that were filled by other females who are potential class members under the class definition Plaintiffs propose. For that reason, Lowe's argues that neither Brady nor Durham could adequately represent the interests of those women when they themselves are complaining about losing the positions held by other female employees.

Although the Court would ordinarily engage in a thorough and exhaustive analysis of this element, as the Plaintiffs have merely repeated the language of Rule 23(a)(4) in their pleadings, the Court concludes an extensive review of the "adequacy" prong is unnecessary. Plaintiffs have simply failed to offer any facts beyond a mere recitation of the rule. Because Plaintiffs are unable to satisfy the commonality and typicality requirements of Rule 23(a)(2) & (3), the Court need not make any further inquiry into the qualifications of Plaintiffs' counsel with respect to prosecuting class actions.

In summary, Plaintiffs herein have simply failed to establish the requisite commonality and typicality needed to satisfy Rule 23(a)'s standards. This being said, the Court recognizes the important role class actions play in the access to and administration of our legal system. Class actions are a unique and complex tool serving to challenge what can be wrongful conduct with widespread consequences that would otherwise be left unchecked without the class action device. However, the effectiveness of the process must, at least in part, lie in its correct and focused application.

In this case, and consistent with the Sixth Circuit's recent decisions in *Reeb* and *Bacon*, Plaintiffs simply have not made an adequate showing of the appropriateness of the

20

class action process to the depth and breadth of the alleged wrongs sought to be remedied here.  Because Plaintiffs have failed to meet their burden of establishing the Rule 23(a) prerequisites for a class action under Rule 23, the Court does not need to engage in an analysis under Rule 23(b).

## CONCLUSION

For the reasons discussed above and at oral argument, **IT IS ORDERED** that:

(1)     Defendant's Motion for Leave to File Sur-Reply *Instanter* (Doc. # 30) is hereby **granted,** and the Court Clerk is instructed to file of record the tendered Sur-Reply;

(2)     Plaintiffs' Motion to Strike Motion for Leave to File Sur-Reply and Motion for Sanctions (Doc. # 31) is hereby **denied;**

(3)     Defendant's Motion for Leave to File *Instanter* Supplemental Authority In Opposition to Motion for Class Certification (Doc. # 46) is hereby **granted,** and the Court Clerk is instructed to file of record the tendered Supplemental Authority; and,

(4)     Plaintiffs' Motion for Leave to File Expert Report and Corresponding Exhibits under Seal (Doc. # 60) is hereby **granted**; and

(5)     Plaintiffs' Motion for Class Certification and for Bifurcation of Trial (Doc. # 25) is hereby **denied.**

This 30th day of March, 2006.



Signed By:

*David L. Bunning*

United States District Judge

| TIC | 1.0 | |